# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WANDA DENISE DAWKINS,**

       **Plaintiff,**

**-vs-**                                                                                       **Case No. 6:14-cv-468-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's application for disability benefits. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

## Procedural History

Plaintiff applied for a period of disability and disability insurance benefits and Supplemental Security Income, alleging that she became unable to work on October 31, 2010 (R. 150-65, 177). The agency denied Plaintiff's applications initially and on reconsideration. Plaintiff requested and received a hearing before an administrative law judge ("the ALJ"). The ALJ subsequently issued an unfavorable decision, finding Plaintiff to be not disabled (R. 17-41). The Appeals Council declined to grant review (R. 1-5), making the ALJ's decision the final decision of the Commissioner.

Plaintiff timely filed her complaint in this action, and the parties have consented to the jurisdiction of the United States Magistrate Judge. The matter has been fully briefed and the case is now ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## Nature of Claimed Disability

Plaintiff claims to be disabled due to "severe high blood pressure, blurred vision, headaches, chest pain, and leg pain" (R. 180).

*Summary of Evidence Before the ALJ*

Plaintiff was fifty-two years old as of the date of decision (R. 159), with a high school education, and past relevant work as a medical assistant, appointment clerk for a dealership, and a school bus driver (R. 181).

In addition to the medical reports and opinions of the treating providers, the record includes Plaintiff's testimony and that of a Vocational Expert ("the VE"), written forms and reports completed by Plaintiff, third party reports, and opinions from state agency examiners and reviewers. The medical evidence relating to the pertinent time period is well detailed in the ALJ's opinion and in the interest of privacy and brevity will not be repeated here, except as necessary to address Plaintiff's objections. By way of summary, the ALJ found that Plaintiff had the severe impairments of: hypertension, fibromyalgia, obesity, heel spurs, plantar fasciitis, headaches, gastro-esophageal reflux disease, a depressive disorder, and a generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c)) (R. 22), but does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 23). The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, finding:

> The claimant can perform sedentary work activity, with lifting/carrying of 10 pounds occasionally, standing/walking a total of 2 out of 8 hours, sitting a total of 6 out of 8 hours, perform postural activities occasionally, with no climbing ladders, ropes, or scaffolds, and a need to avoid concentrated exposure to temperature extremes, humidity, and work hazards. She cannot perform work that requires performing very quick or fast-paced work tasks with a production quota on a weekly or monthly basis (20 CFR 404.1567(a) and 416.967(a)).

(R. 25).

With the assistance of the Vocational Expert, the ALJ determined that Plaintiff could return to her past relevant work as an appointment clerk, and was, therefore, not disabled (R. 34-35).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff raises two issues for review, contending: 1) the ALJ's credibility determination is unsupported by substantial evidence because the ALJ erred in analyzing the required factors when assessing Plaintiff's credibility; and 2) the ALJ's determination that Plaintiff could perform her past relevant work is unsupported by substantial evidence. The Court considers these objections in the context of the sequential evaluation utilized by the ALJ.

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). As the ALJ concluded her analysis at Step 4, the Plaintiff had the burden at all relevant times.

*Credibility*

A claimant may seek to establish that he has a disability through his own testimony regarding pain or other subjective symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). "In such a case, the claimant must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* Where an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based

on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote,* 67 F.3d at 1562.

Here, after the ALJ detailed Plaintiff's allegations of pain and restrictions and the medical evidence, she determined that the claimant's allegations were "only partially credible," finding:

> The medical evidence does not establish headaches, weakness, fatigue, mental fogginess, visual problems, pain, or any other symptom of the level and severity that would result in debilitating limitations. The medical evidence does not establish any medication side effects that would result in debilitating limitations and the claimant does not require use of a brace on the upper or lower extremities, or an assistive device for ambulation. The record contains no radiological studies that indicate significant arthritis or other joint problems with the knees. The claimant sought treatment at the emergency room on multiple occasions when her hypertension was not controlled and she complained of associated headaches, but she has not required recurrent inpatient hospitalizations, surgeries (other than minor foot procedures by a podiatrist), prolonged physical therapy, or chronic pain management treatment. In addition, most all CTs and MRIs studies have been normal (Exhibits 5F, 8F, 9F, 15F, and 18F). A cardiac testing including a cardiac catheterization in February 2011 shows mild luminal irregularities involving mid left anterior descending artery, otherwise normal epicardial coronary arteries and a normal ejection fraction (Exhibits 2F and 8F). The claimant reported to treating physicians that the symptoms were improved with medications or other treatment when she was compliant or treated in the emergency room so noted above.
>
> The claimant's activities of daily living are self-restricted, as no treating source has advised the claimant to stay home all day, lie down during the day, or to restrict activities of daily living in any manner. Rather, she has been advised to exercise regularly and lose weight by treating source at the Family Physicians of Kissimmee facility (Exhibit 4F, 6F, 1 lF, l3F). She engages in activities of daily living as so motivated. The claimant has not been advised to refrain from performing all gainful work activity. The claimant's credibility is further diminished by her noncompliance with treatment, especially for her hypertension, headaches, and obesity, as shown by the treating records from Family Physicians of Kissimmee. She has not sought mental health treatment by a mental health provider despite her complaints of increasing depression and anxiety.
>
> The undersigned notes the claimant's noncompliance with her medications, and not following adequate diet and exercising regularly. Medical records from Physicians of Kissimmee indicate the claimant is not fully compliance [sic] with medications (Exhibits 4F, 6F, I IF and 13F). The undersigned notes that the claimant was again not being compliant with medications in July 2011 (Exhibit 19F). The claimant reported during her testimony that she was seeing a nephrologist and a rheumatologist, but she did not have their names with her at hearing. The undersigned asked that the claimant send in their names and addresses so that the undersigned could request the treatment

records from these sources. However, no information about these alleged sources was forthcoming posthearing from the claimant.

(R. 32-33).

Plaintiff objects to the ALJ's evaluation of her credibility, contending that the ALJ erred in 1) finding that Plaintiff's testimony about her limitations in daily activities is not supported by medical evidence; 2) discrediting Plaintiff's allegations because of non-compliance with medication; and 3) discrediting Plaintiff's allegations of mental limitations because she has not sought mental health treatment.

As both sides acknowledge, an ALJ considers several factors in making a credibility determination. Although Plaintiff contends that the ALJ erred in evaluating Plaintiff's daily activities, activities of daily living are an appropriate consideration when evaluating the credibility of a claimant's statements. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). Plaintiff contends that the finding with respect to her daily activities is not supported by substantial evidence because she was directed to "rest her feet" by her podiatrist and to limit strenuous activities by the doctors at the emergency room. The ALJ, however, found that the podiatrist's instructions to elevate her feet were "temporary instructions, and not indicative of any permanent work-related limitation" (R. 34). As for Plaintiff's argument that "it is reasonable to conclude that an appropriate activity after visiting the emergency room is to rest," the ALJ noted "no treating source has advised the claimant to stay home all day, lie down during the day, or to restrict activities of daily living in any manner. Rather, she has been advised to exercise regularly . . ." (R. 33). As these findings are supported by substantial evidence, no error is shown.

Plaintiff next contends that the ALJ should not have discredited her testimony because of non-compliance with treatment because "there is no evidence to support that had Plaintiff followed her treatment she would be able to return to work," citing *Patterson v. Bowen*, 799 F.2d 1455, 1460 (11th Cir. 1986) ("In order to deny benefits under § 404.1530, the ALJ must find that if the claimant

-6-

followed the prescribed treatment, [her] ability to work would be restored, and this finding must be supported by substantial evidence.") (Brief at p. 9). However, as noted by the Commissioner, discounting a claimant's allegations because she was not compliant with treatment is not the same as finding Plaintiff to be disabled, but able to return to work but for her noncompliance. *Compare* SSR 96-7p, at *7[1] with 20 C.F.R. §§ 404.1530(a), (b),[2] 416.930(a), (b).

Regardless, Plaintiff does not dispute that she was often non-compliant with her medications. As detailed by the ALJ in the decision, the medical evidence shows that when she was compliant, her blood pressure responded. *See* R. 27 ("The claimant reported feeling better since she had been started on Minoxidil. Her blood pressure at home had been better"); R. 28 ("The claimant reported that her blood pressure had been very well controlled after increasing the dose of Clonidine"); R. 29 ("Since her last visit she admitted to being compliant with medications, following a proper diet, and exercising regularly. On physical examination, she was 67 inches tall and weighed 282 pounds. Her blood pressure was 140/82"); R. 30 ("She stated that she had terrible headache the night before and her blood pressure was 220/110. She was feeling depressed and stated her disability was denied and she lost her job. She admitted she had not used Clonidine patches that week, as they fell off when she showered, but she had been on Clonidine pills. The doctor discussed with the claimant the importance of not taking any NSAIDS under no [sic] circumstances and advised her to resume use of Clonidine path [sic] since she was under better control (Exhibit 13F);" R. 31 ("Her blood pressure at the hospital was 249/126. After treatment, her blood pressure went down to 176/79;" "She had been off all of her

---

[1] "[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."

[2] 20 C.F.R. § 404.1530 **Need to follow prescribed treatment**.
(a) What treatment you must follow. In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.
(b) When you do not follow prescribed treatment. If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we
will stop paying you benefits.

medications" and her blood pressure was 196/100); R. 31-32 (Plaintiff admitted to being not compliant with current medications, blood pressure was 170/102); R. 32 (blood pressure not controlled at home, but controlled with medications at the hospital). As such, the ALJ's finding that "[t]he claimant reported to treating physicians that the symptoms were improved with medications or other treatment when she was compliant or treated in the emergency room" is supported by substantial evidence. Plaintiff's noncompliance with treatment despite her improvement while on her medications undermined the credibility of her allegations and was properly considered by the ALJ.[3] *See Ellison v. Barnhart,* 355 F. 3d 1272, 1275 (11th Cir. 2003).

Plaintiff's last contention with respect to the credibility analysis is that the ALJ improperly found that Plaintiff had not sought mental health treatment. The ALJ, however, did not make such a finding. Rather, the ALJ found that Plaintiff "has not sought mental health treatment *by a mental health provider* despite her complaints of increasing depression and anxiety." (R. 33 emphasis added). The ALJ's statement is accurate. The ALJ recognized that Plaintiff sought treatment for these conditions with her primary care practitioner (R. 32). The ALJ also noted that Plaintiff was given a referral to a psychiatrist by her primary care physician (R. 32, 604), and the record contains no evidence that Plaintiff followed through on that referral. While the Court agrees with Plaintiff's implicit contention that a mental health impairment may be of such severity that it might limit a claimant's motivation or ability to seek out specialized care, there is no evidence that claimant's impairments here were that severe.

To the extent Plaintiff appears to be arguing that an ALJ should not discredit allegations of mental health impairments based solely on the identity of a provider, the Court agrees. That is not

---

[3]The Court rejects Plaintiff's additional contention that the ALJ failed to consider the side effects of some of the medications, such as Ambien and Celebrex, that Plaintiff had "stopped taking." One does not experience side effects from medications one does not take. As for other side effects, the decision reflects that the ALJ considered same and determined that "[t]he medical evidence does not establish any medication side effects that would result in debilitating limitations" (R. 32). Indeed, the headache pain, blurred vision and other symptoms accompanying Plaintiff's accelerated hypertensive episodes are not side effects from medications she takes but are symptoms that worsen when her medications are *not* taken.

-8-

what happened here, however. The ALJ evaluated Plaintiff's allegations of depression and anxiety (R. 22-23) and the evidence supporting same, including the opinions of examining and non-examining consultants, and determined that these impairments did not result in significant disabling limitations. This finding, too, is supported by substantial evidence, as detailed in the decision.

As the credibility finding is supported by substantial evidence (even without any consideration of whether Plaintiff sought to be treated by a specialist), it will not be disturbed.

*The step 4 finding*

Plaintiff's final contention is that the ALJ erred in determining that Plaintiff was "capable of performing past relevant work as an appointment clerk" (R. 35) because the ALJ "provided no specific

findings or analysis regarding the physical and mental demands of this work, as required by SSR 82-62" (Brief, p. 12). Plaintiff contends that the ALJ did not analyze the demands of past work as it was actually performed. As pointed out by the Commissioner, however, the ALJ, relying on the testimony of a Vocational Expert, determined that Plaintiff could perform her past relevant work as an appointment clerk as it is *generally* performed (R. 34-35, 77-79). This is sufficient to support an ALJ's finding that a claimant can return to her past relevant work. *See* 20 C.F.R. § 404.1560(b)(2), 416.960(b)(2); *Leonard v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 298, 301 (11th Cir. 2011) (VE's testimony supported ALJ's determination that claimant could perform past relevant work); *Waldrop v. Comm'r of Soc. Sec.*, 379 Fed. Appx. 948, 953 (11th Cir. 2010) ("the ALJ's determination that Waldrop could still perform her past relevant work as a human resources clerk, as it is performed in the general economy, is supported by substantial evidence. While Waldrop points out that the record contains limited information concerning her duties as a human resources clerk, it is the claimant's burden to demonstrate not only that she can no longer perform her past relevant work as she actually

performed it, but also that she can no longer perform this work as it is performed in the general economy.").[4]

A final note is in order. It is clear that Plaintiff is facing legitimate health challenges and the record contains evidence which supports her contention of significant limitations arising from those health challenges. Nonetheless, it is not the task of the Court to evaluate the evidence and make a determination as to disability in the first instance. The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The only issue before the Court is whether the decision by the Commissioner that Plaintiff did not meet this standard is adequately supported by the evidence and was made in accordance with proper legal standards. As the Court finds that to be the case, it must affirm the decision.

---

[4]Nor is the Court persuaded by Plaintiff's contention that the ALJ confused Plaintiff's work as a medical assistant with her work as an appointment clerk. The ALJ noted that "The claimant performed this work as an appointment clerk as her *primary* duty in a medical office for several years." (R. 35 emphasis added). Plaintiff described her work in the medical office as "answer phone, make appts, check patient in and out, help Dr. With pts." (R. 192). While the description includes other duties, scheduling related work was clearly primary. Additionally, Plaintiff described her work as a receptionist at a car dealership as " I answered the phones" and called people (R. 76-77).

## Conclusion

The administrative decision was made in accordance with proper legal standards and is supported by substantial evidence. It is therefore **AFFIRMED.** The Clerk is directed to enter judgment accordingly and close the file.

**DONE** and **ORDERED** in Orlando, Florida on May 7, 2015.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record